Good morning, Your Honors. May it please the Court. My name is Kirsten Fulton-Decker. I'm an Assistant Federal Public Defender here in Phoenix. I represent the petitioner, Paul Melville. I'm going to watch the clock and try to save a couple of minutes for rebuttal. I want to start by flagging things that the parties agree on, just to make sure that there's no questions from the Court about those things. We agree on three things. We agree on the date on which Mr. Melville's conviction became final for purposes of direct review. We agree on the date on which the period of statutory tolling began. And we agree on the date on which Mr. Melville's pro se federal habeas petition was filed under the prison mailbox rule. Those are three errors that the District Court committed that we agree should be corrected by this Court. There's only one other issue in this case, and it's dispositive. And that is the question of when the period of statutory tolling ended for purposes of the statute and under the rule of Kerry v. Saffold. The magistrate judge in this case correctly determined or correctly followed the persuasive decision in Celaya v. Ryan and ended the period of statutory tolling when the Arizona Court of Appeals issued its mandate in this case. The District Court did not disturb that ruling when it reviewed the magistrate judge's recommendation. In order to give guidance to the judges of the District Court on how to compute the end of the period of statutory tolling, this Court should publish an opinion that says that Celaya is correct. It should reverse the denial of Mr. Melville's habeas petition as untimely and remand this case for further proceedings. I welcome the Court's questions. I've sort of summed up my pitch here, but I know that there's going to be a lot of questions about what implications adopting Celaya might have. Or perhaps not. Or perhaps not. I just want to say that the reason that Celaya is correct is in Saffold, the Supreme Court said that when a federal court is looking at how a federal statute of limitations interacts with it, it should look to how the state process actually functions rather than formal labels on particular aspects of the state procedure. In this case, we're trying to figure out whether an Arizona post-conviction proceeding remains pending during the period after the exercise of review of post-conviction cases denies relief and then further review may or may not be sought. And once that further review is sought and denied or the time for seeking that further review expires, the Arizona Court of Appeals issues a mandate and ends the period of statutory tolling. And the reason it makes sense that the period of statutory tolling ends when the mandate issues is, it's clear that, I shouldn't say it's clear, it is possible for a pro se or not pro se, a post-conviction petitioner to ask for further review, even after the deadline expires, but before the mandate issues, because the Arizona Supreme Court can and does entertain untimely petitions for review with an express or implied request to consider that as a timely file. And because of that, the period of statutory tolling, the post-conviction application is pending, it's under consideration, there remains avenues of review open. And so under the framework described in SAFL, the Celaya R&R is correct that statutory tolling in Arizona continues until the Arizona Court of Appeals issues its mandate in those cases where the Arizona Court of Appeals grants discretionary review in the post-conviction posture, but denies relief. That's the balance of my time. That sounds good. Thank you, counsel. Good morning, and may it please the court, my name is Casey Ball, Assistant Attorney General here on behalf of the respondents. This court should affirm the district court's denial of habeas relief because Melville's petition is untimely. And I agree with Mr. Helsenegger, we agree on quite a bit of stuff now, there were some mistakes made. Cases evolved quite a bit since it was last in court. Yes. In reviewing the record and excerpts of record, the respondents agree the conviction was final for purposes of D1 after he filed his notice of post-conviction relief. So you want us to affirm telling the district court it was wrong on the issue that's now the one issue that's left. Correct. And why should we do that? Because Celaya was wrong when it was decided by the district court and affirmed in an unpublished decision by this court. It's wrong for three reasons. The first is it improperly distinguished Hemerly, in which this court found that when the Arizona Supreme Court denied review, that was the conclusion of the collateral proceeding. It wasn't when the Court of Appeals eventually issued a mandate. There's really no practical difference between the Arizona Supreme Court denying review or the Arizona Court of Appeals. There's one critical difference, which is that the Arizona Supreme Court doesn't have a higher state court to go to than the state Court of Appeal does. That's true, but then if that was the case, then that should be the controlling date is when the Court of Appeals denied review, which is what Hemerly found. No, because denying review doesn't end it. At that point, you can go on to the Arizona Supreme Court. Correct. But is there anything that prevented an effort to go to the Arizona Supreme Court prior to the issuance of the mandate by the Court of Appeal? In this case or in any case? We'll start with this case, but in any case, it's a general question. I understand the mandate kind of closes the door, but before that, is there anything that prevents somebody from trying to say to the Arizona Supreme Court, the Court of Appeal decision was incorrect? I'm appealing that or I seek review of that. Well, there are deadlines for doing so. There's a 30-day deadline. Now, Mr. Hilsendegger raises the exception where, for some reason, maybe a petitioner was not notified of the Court of Appeals decision and can provide good cause for not timely following filing a petition for review. In rare circumstances, the Arizona Supreme Court will grant those. But at that point, then there's something for a higher court to consider. And the case is pending at that point because they're, again, considering the merits of the decision. Even after a mandate is issued, theoretically, a defendant could file a motion to recall the mandate. And yet, those are, again, they have to show good cause for that. Those are the exceptions to the rule. The rule, as laid out in Cary and Lawrence and in the statute, is that the tolling begins when the petition is no longer pending. And that's when the court ends its review of the case. Here, in this case, the Court of Appeals ended its review when it issued its memorandum decision. From the time it issued... Counsel, why wouldn't the time end? The Arizona Supreme Court granted an extension in this case. Am I right about that? During the Direct Appeal... It granted an extension until September 29th, 2014. So, that was in the Direct Appeal. We're in agreement on that. It's the extension during the post-conviction rule. And that was in 2017. On the tail end. Yeah, on the tail end. But the question is still the same question. Which is, why wouldn't that be baked in for purposes of the... We're trying to figure out when they write it on the back end of the sequence. And I have Judge Graber's same question. So, the reason is because there's no motion for reconsideration at that point. It's just a motion to extend the time to reconsider. The court isn't sitting there re-contemplating its decision while it's waiting for this motion for reconsideration to maybe come. Nothing happens at that point. There's no motion that actually places an issue before the court to reconsider. There's no further petition or review to the Arizona Supreme Court. When you just said nothing happens at that point, I think you might be speaking colloquially. And I'm not trying to give you a hard time. But I am trying to figure out, just to communicate clearly. Do you mean nothing happened at that time? Yes, nothing happened. So, going back... Right. So, I agree with you on that point. But going back to Judge Clifton's question, the question isn't whether today, Monday morning, quarterbacking this, we can figure out whether something happened. But I think what all three of us are trying to get at is that at the juncture you're talking about, there was still an opportunity for him to pursue his appeal or his post-conviction proceeding. We now know that he didn't, right? But at the time, there had been an extension, right? And he could have. So, why wouldn't we consider that? So, I think this actually goes to the tension between D-1 and D-2 in 2244. D-1, when we're talking about direct appeal, has that language, the time for seeking further review. D-2 doesn't have that language. It just says, while the case is pending. And in Kerry and in Lawrence, the court is addressing it in terms of, is the court actually considering the cases? Are they reviewing something? So, states do this differently, right? So, in Kerry, it was a very unique situation. California has this unique system where they've got original petitions that can be filed in different courts. And the court there said, well, we look to the practical effects. The practical effects here in Arizona are that the Arizona courts treat petitions for review and direct appeals a little bit differently on the tail end. In direct review, Rule 31 provides timelines for when a mandate needs to be issued. Rule 32 does not provide those timelines. It doesn't even require a mandate. We have a statute that requires mandates. But again, that statute doesn't require timelines either. The practical reality is it's the last avenue of relief in state court for defendants. And so, the state court isn't as concerned about having a document that administratively closes it issued in a timely manner. Because it's the last avenue of relief in the state court. You know, excuse me for interrupting, but I'm not sure I really hear an answer to Judge Clifton's question. How do we know that there wasn't anything pending and that the last avenue for relief hadn't been explored until after the fact? Because there's no question before the court at the after... Oh, we don't know that, right? The Court of Appeals issues its ruling and you're deeming that as the end of the story. But there's still an avenue at that point until... We know now they didn't file something. But right the day after the Court of Appeals ruled, it wasn't clear that that wasn't going to be filed. We didn't know that yet. So, what's your best answer that we should deem it all completed as of the time the Court of Appeals rules? I would cite to Lawrence where they say, read naturally the text of 2244D2, the word pending. The text of the statute must mean that the statute of limitations is told only while state courts review the application. So, the application here, Melville is applying for post-conviction relief. The Court of Appeals says, we're granting a review, denying relief. You've got 30 days to petition for further review. He doesn't. They're not reviewing it during that period. They've closed the book on the case. And until he either moves for reconsideration, actually moves, not just ask for an extension of time, or petitions for review to a higher court, they're not reviewing the case at that point. Had he petitioned for review two weeks later, then what would happen to your tolling analysis? It sounds like you're starting the clock and then stopping the clock, and in fact, winding the clock backwards. Well, and that's, you know, in part because of how Kerry did his analysis. Until a petition is actually filed, there's nothing to review. And so, if he had filed a petition for review, timely, and that would have continued the tolling, because now a court has a question before it, something to review. At the point that the Court of Appeals issued its MEM decision, the case was over from the standpoint of the Court of Appeals up until he was either presented with a question in the motion for reconsideration to consider, or until the Arizona Supreme Court was requested to review their decision. Neither of those happened here. And so, we go back to the last moment that the state courts are actually reviewing the case, which is when they issued the memorandum decision. And that just follows naturally from Kerry, where, again, California had a unique system, but it was dependent on the defendant actually filing another appellate-type petition in another court. And I just point this court, I guess, to the last couple things in my view. Klitsky, which is the Guam case, held that it's the decision of the state appellate court, rather than the ministerial act, that signals the conclusion of review. Held the same in Whetton v. Clark in an unpublished case out of Nevada. Woodson v. Washington held similarly. And then, of course, Hemmerly v. Shiro from Arizona, but that involved the Arizona Supreme Court. I don't see a distinction there. I think Celaya incorrectly tried to distinguish Hemmerly on that point. So, for those reasons, I ask that this court affirm the denial of habeas relief, albeit on different grounds than what the district court found. Thank you. Thank you, counsel. Now you have something to respond to. I do, but I really just want to make one point. Since we're all textualists now, as Justice Kagan has reminded us, the focus here, I think, is not on the word pending, but on the word is. And, Judge Christin, I think your questions focus on that in a way that would favor Mr. Melville. Because, at the time, Mr. Melville could have filed a, for further review, in the Arizona Supreme Court. His petition was not complete in terms of its review by the state courts. He had an opportunity to seek further review. And that's all that Stafford's interpretation of the statutory tolling provision, D-2, requires. Is there a time limit built into the Arizona rules or statutes that would have ended the time for him to seek review of the April 18, 2017 denial by the Arizona Court of Appeals? The Arizona Rules of Criminal Procedure provide and provided for a 30-day deadline for filing, for further review. So, why wouldn't the time end 30 days after the denial of relief by the Arizona Court of Appeals? In the absence of any request for an extension of time or for reconsideration by the Court of Appeals, I think in the ordinary case, Your Honor, that would be the correct date for ending statutory tolling. So, in a situation where, say, Mr. Melville had not obtained an extension of time to file with the Arizona Supreme Court after the denial of his post-conviction appeal, the date would have been May 18. Yes, 30 days, so September, April, yes. Anyway, so May 18 would have been the date that statutory tolling ended because that's 30 days after the Arizona Court of Appeals' decision. Since he did obtain an extension of time, that deadline at least goes through June 1st. But, because Arizona also has a procedure for issuing mandates, which Rule 32, the post-conviction rule, incorporates the same rules that apply on direct review under Rule 31 to create a deadline for issuing the mandate. Now, the mandate is a purely ministerial act, and so you might be answering this a little differently than what I understood you to be answering in your brief. What I hear you saying in response to Judge Graber's question is that 30 days after the Court of Appeals ruled, setting aside the possibility of any extension, that all else being equal, that would be the deadline for the clock to stop. Yes, that is correct. Not when the mandate issues. Well, I guess... Suppose the clerk is, you know, out with COVID, and the 30 days expires, and it's two more years before the mandate issues. Why would we go from the date of the mandate instead of the date on which the decision was issued plus 30 days or any extension thereof? Your Honor, that would be a sufficient rule for my client to prevail here. I think the mandate rule is cleaner because it's the clearest indication from what I understand Arizona's procedures to be that there isn't this kind of dueling assertion of jurisdiction over the same case by a lower court and a higher court. The state put some examples in its brief of lengthy delays in issuing the mandate. I don't remember if any of them were two years, but I also understood that hypothetical. It should be a hypothetical example, not an actual example. But we see those examples. Oh, yes. Yes. We sit around sometimes for whatever reason in the clerk's office, the mandate's not issued for weeks and months on end. Right. So there's a lot to be said for a bright line rule and a uniform rule that would apply evenly and predictably. So could you circle back to Judge Graber's question? And I just want to make sure that I really understand your position on this. Are you advocating for a bright line rule when the mandate issues or are you advocating for the 30-day rule, 30 days after the Court of Appeals? I think I'm primarily advocating for based on the mandate because there's a clear procedure set forth in Arizona law that dictates when the mandate should issue. My fallback position, Your Honor, is the 30 days, what you call the 30 days rule or whatever extension of time. That would also be a clear rule set forth in Arizona law, and that would be sufficient for my client to prevail. And so either one of those is fine with me. I think the mandate rule is preferable because it has, I think it's more predictable, but I see that the red light is on. You answered my question. Let me just check to see. Judge Plitzen, do you have any further questions? Judge Graber? No, thank you. There are no further questions. I'll ask the panel to reverse. Thank you. Thank you both. We'll take that matter under advisement and go on to the next case on the calendar.
judges: GRABER, CLIFTON, CHRISTEN